**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:22-CR-00374 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL CARTER | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant Terrell Carter has moved for reconsideration of the pretrial detention order based on the argument that his pretrial detention is unduly prolonged in violation of the due process clause.  (Doc. 61.)  Upon consideration of all of the relevant factors, the court will deny Carter's motion.

### BACKGROUND

An indictment was returned on October 19, 2022, charging Carter with a single count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  The indictment alleges that on January 29, 2022, Carter knowingly possessed a firearm in Dauphin County, Pennsylvania, while knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.  (*Id.*)  An arrest warrant was issued for Carter on the same date.  (Doc. 5.)  At that time, Carter was in state custody, so the court issued a *writ of habeas corpus ad prosequendum* to bring Carter to federal court for his arraignment on October 27, 2022.  (Docs. 6, 15.)  The

Government filed a motion for detention based on the fact that Carter is charged with an offense for which the maximum sentence is life imprisonment or death and, in the Government's view, no condition or combination of conditions will reasonably assure the appearance of Carter as required and the safety of Carter and the community.  (Doc. 9, pp. 1, 6.)[1]  Magistrate Judge Susan E. Schwab granted the Government's detention motion, which was not opposed because Carter was in state custody.  (Doc. 13.)  Carter entered a not guilty plea and his case was listed for trial on December 5, 2022.  (Docs. 12, 14.)

Carter filed four unopposed motions for continuance of the trial date, each of which was granted by the court resulting in a continuance of the trial date to August 7, 2023.  (Docs. 19–26.)  Carter then filed a motion to dismiss the indictment on June 26, 2023, arguing that the sole count charged, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to Carter because it violates the Second Amendment.  (Doc. 27.)  That motion became ripe on August 28, 2023.  (*See* Docs. 35, 39.)  On October 11, 2023, the court stayed resolution of the motion to dismiss pending the United States Court of Appeals for the Third Circuit's decisions in *United States v. Quailes*, 688 F. Supp. 3d 184 (M.D. Pa. 2023), appeal docketed, No. 23-2533 (3d Cir. Aug. 22, 2023), and *United States v. Harper*, 689

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

F. Supp. 16 (M.D. Pa. 2023), appeal docketed, No. 23-2604 (3d Cir. Sept. 1, 2023).[2]  (Doc. 42.)

In light of the pending (and eventually stayed) motion to dismiss, Carter filed three additional unopposed motions to continue the trial date.  (Docs. 31, 40, 43.)  These motions were all granted, extending the trial date to February 5, 2024.

Carter then filed a motion to reconsider detention, proposing that he be released to the custody of a third-party custodian.  (Doc. 45.)  The motion was opposed by the Government.  (Doc. 51.)  The court held a hearing on January 31, 2024, to address Carter's motion, and then denied the motion for the reasons stated on the record at the conclusion of the hearing.[3]  (Doc. 53.)  Reviewing the issue of detention de novo pursuant to the Bail Reform Act, the court determined that, although the proposed third party custodian was appropriate, Carter's prior convictions, pattern of criminal activity, and the nature of the instant offense, in combination, led to the conclusion that there was no condition or combination of

---

[2] The court notes that the Third Circuit consolidated these appeals for purposes of disposition. *United States v. Quailes*, No. 23-2533, Doc. 17 (3d Cir. Sept. 14, 2023).

[3] On the date of the hearing, Carter was still in state custody and had not posted bail on his state charges.  He was brought to federal court on a *writ of habeas corpus ad prosequendum*.  (Docs. 48, 54.)

conditions that would reasonably assure the court of Carter's appearance at future proceedings or the safety of the public.[4]

Carter filed two additional unopposed motions to continue the trial date based on the stayed motion to dismiss. (Docs. 49, 55.)  The motions were granted, extending the trial date to June 3, 2024.  (Docs. 50, 56.)  Then, on June 14, 2024, the Government filed a motion to continue the trial date asserting that the continuance was necessary because additional time is needed for the resolution of the pending pretrial motion to dismiss the indictment.  (Doc. 59, ¶ 5.)   The Government advised the court that "[d]efense counsel does not concur in this request for a continuance, but also does not wish to set a date for trial."  (*Id.* ¶ 7.) The court granted the Government's motion and extended the trial date to September 9, 2024.  (Doc. 60.)

On July 9, 2024, Carter filed a motion for release on grounds of due process and a brief in support.  (Docs. 61, 62.)  The Government filed a brief in opposition on July 23, 2024.  (Doc. 63.)  Carter has not filed a reply brief, and this motion is ripe for review.

---

[4] During the bail hearing on January 31, 2024, the court and counsel reviewed the pretrial services report that was prepared for Carter's arraignment on October 27, 2022.  The court relied on the pretrial services report for information regarding Carter's criminal history, and relies on the same report for purposes of resolving the current motion.

As of the date of this memorandum, Carter has been ordered detained in this federal criminal matter for twenty-two months.  However, Carter has been held in state custody on pending state charges since January 30, 2022, and currently remains in state custody, for a total of thirty-one months.[5]

## JURISDICTION

This court has jurisdiction under 18 U.S.C. § 3231, which gives district courts original jurisdiction over cases in which offenses against the laws of the United States are alleged.

## LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3402 *et seq.* (1984), is the statutory authority governing the decision to release or detain a defendant pending trial, sentencing, and appeal.  The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1983), on the other hand, is the statute that regulates the permitted length of pretrial delay for both detained and non-detained defendants.  *See United States v. Accetturo*, 783 F.2d 382, 387 (3d Cir. 1986).  However, the Third Circuit has recognized that in many federal criminal cases, delays excludable from the Speedy Trial Act are common.  *Id.*  In such situations, the Third Circuit has recognized that even when a

---

[5] Carter has multiple charges pending at *Commonwealth v. Terrell Carter*, No. CP-22-CR-0000925-2022 (docket sheet available at https://ujsportal.pacourts.us, last viewed on August 23, 2024).  According to the docket sheet, monetary bail was set at $50,000 on January 30, 2022, and Carter is scheduled for a bail hearing on October 15, 2024.  The state charges are related to the federal indictment.

lengthy pretrial detention does not trigger the protections of the Speedy Trial Act, there may be a due process challenge to the length of detention.  *Id.* at 387–388 (citing *United States v. Colombo*, 777 F.2d 96 (2d Cir. 1985)).  "Thus, a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds."  *Id.* at 388.

Recognizing that due process is a "flexible concept," rather than establishing a bright line rule about the length of pretrial detention, the Third Circuit has instead instructed courts to make due process judgments on the facts of the individual case. Courts should consider the factors relevant in the initial detention decision, including "the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits."  *Id.*  In addition, courts should also consider "the length of detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity."  *Id.*  The court observed that "[i]n some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention."  *Id.*

**DISCUSSION**

Carter argues that due process concerns compel his release from pretrial detention while his motion to dismiss remains pending.  (Doc. 62, pp. 2–8.)  Carter has addressed each of the *Accetturo* factors, and Government has responded as to each factor in opposition.  (*Id*. at 3–8; Doc. 63, pp. 6–9.)  The court will address each of the *Accetturo* factors in turn.

**A. Seriousness of the charge**

Carter asserts that the pending charge is not particularly serious based on the fact that it carries a statutory maximum sentence of ten years and does not involve actual violence, just possession of a firearm by a prohibited person.  (Doc. 62, p. 4.)  Carter acknowledges that the indictment references 18 U.S.C. § 924(e), known as the Armed Career Criminal Act ("ACCA"), which, if applicable, would trigger a fifteen-year mandatory minimum sentence and a statutory maximum sentence of life imprisonment.  (*Id.*)  However, Carter maintains that the ACCA does not apply because he does not have the required number of predicate offenses.  (*Id.*)

The Government concedes that because one of Carter's prior convictions does not qualify as a predicate offense under 18 U.S.C. § 924(e), the enhanced penalties of the ACCA do not apply.  (Doc. 63, pp. 4–5.)  But, the Government contends that even absent the ACCA enhancement, Carter is facing a lengthy term of imprisonment for this charge.  On review of the United States Sentencing

Guidelines, the Government asserts that Carter's sentencing range for this charge is 92 to 112 months imprisonment, based on an offense level of 24 and criminal history category V.  (*Id.* at 5.)  In addition, the Government argues that Carter's conduct of unlawfully possessing a loaded firearm while possessing a controlled substance is a serious charge.[6]

The court agrees with the Government that the pending charge is serious.  If seriousness is considered by reference to the potential length of incarceration, then a potential guideline range of 92 to 112 months imprisonment is significant.  The court notes that Carter did not contest the Government's estimation of the sentencing guideline range.  And, if seriousness is considered by reference to the conduct at issue, then the possession of a firearm by person who is prohibited from firearm possession as a result of multiple adult felony convictions for drug trafficking and firearm offenses is quite serious.  Thus, based on consideration of both the potential punishment and the conduct at issue, the court concludes that the charge against Carter is serious.  This factor does not support Carter's due process argument.

---

[6] Carter is not charged with possession of a controlled substance in the federal indictment. However, he is charged with three counts of possession of a controlled substance in the pending state prosecution.  See *Commonwealth v. Terrell Carter*, No. CP-22-CR-0000925-2022 (docket sheet available at https://ujsportal.pacourts.us, last viewed on August 23, 2024).

**B. Strength of the Government's proof that Carter poses a flight risk or a danger to the community**

Carter argues that at the detention hearing in January 2024, the Government relied primarily on Carter's criminal record with respect to this factor.  (Doc. 62, p. 4.)  With respect to his criminal record, he notes that it is "not particularly recent," with his last court case prior to the instant charges occurring in 2017.  Carter asserts that the pretrial services report does not indicate that he has ever violated probation or parole.  (*Id.* at 5.)  And, Carter contends that "[g]iven the lack of a mandatory minimum in the instant case and [Carter's] lack of violation history or ties to any region other than Harrisburg, there is little reason to believe him a risk of flight."  (*Id.*)

The Government counters that Carter's prior conviction for flight to avoid apprehension and the lengthy prison term Carter faces if convicted, in combination, provide ample evidence that he poses a flight risk.  (Doc. 63, pp. 5–6.)  The Government also maintains that Carter's criminal history, which includes three separate felony drug trafficking charges, two felony firearm charges, and pending state and federal drug distribution and firearm charges, establishes that Carter poses a danger to the community.  (*Id.* at 6.)

The court has reviewed Carter's criminal history that is detailed in the pretrial services report.  In 2008, when Carter was 19, he was convicted in state court of carrying a firearm without a license, possession with intent to deliver a

9

controlled substance, possession of drug paraphernalia, and providing false identification to law enforcement, for which he was sentenced to a total term of three to six years in prison. In 2012, at age 23, Carter was convicted in state court of possession of a controlled substance and disorderly conduct. The sentence for that conviction is not stated in the report. In 2014, at age 26, Carter was convicted in state court of carrying a firearm without a license, possessing a firearm with an altered or obliterated serial number, possession of a firearm by a prohibited person, flight to avoid apprehension, possession with intent to deliver a controlled substance, and several minor charges, for which he was sentenced to a total term of two to four years in prison. Finally, in 2017, Carter was convicted in state court of possession with intent to deliver a controlled substance and sentenced to one to two years in prison. The pending charges arise from Carter's arrest in 2022 when he was 33 years old.

This review of Carter's criminal history establishes that he has committed multiple serious offenses between the ages of 19 to 28, and was not deterred by any prior conviction or sentence. The evidence of Carter's criminal record strongly supports the conclusion that Carter poses a danger to the community. In addition, the fact that Carter has provided false identification to law enforcement and engaged in flight to avoid apprehension, and is currently facing a lengthy term of imprisonment if convicted, is strong evidence in support of the conclusion that

he presents a flight risk.  This factor does not support Carter's due process argument.

### C. Strength of the Government's case on the merits

Carter asserts that the question of whether the firearm charge may proceed remains an open question based on this court's decisions to dismiss the same charge in two other cases based on the determination that this firearm provision was unconstitutional as applied to those defendants.  (Doc. 62, p. 5.)  And then, Carter also argues that the evidence against him is "not particularly strong."  (*Id.*) The Government disagrees with Carter's assessment of the evidence, instead asserting that the evidence is strong.  (Doc. 63, pp. 6–7.)

With respect to the first aspect of Carter's argument, the court has stayed resolution of the motion to dismiss the charge in recognition of the fact that the court's prior determinations to grant as-applied challenges to the constitutionality of the firearm provision at issue have been appealed by the Government.  The decision to stay resolution of Carter's motion was also informed by the fact that numerous other courts have addressed the constitutionality of this firearm provision and reached different conclusions and neither the Third Circuit nor the Supreme Court have yet issued a final decision clearly addressing the constitutionality of 18 U.S.C. § 922(g)(1).  Accordingly, the court views the

question of whether the firearm charge will proceed or be dismissed on constitutional grounds as an open question.

With respect to the strength of the Government's evidence of Carter's guilt, the court relies on the information provided by the Government. Carter was driving a vehicle when law enforcement conducted a traffic stop. The registered owner of the vehicle was in the passenger seat. After the owner-passenger provided consent to search, law enforcement found a loaded firearm under the driver's seat, a small bag of cocaine, and 51 alprazolam tablets in a plastic bag near the driver's seat. When Carter was searched incident to arrest, he was found to have three grams of a fentanyl mixture in his pocket. (Doc. 63, pp. 6–7.)

From this evidence, the court observes that Carter was in proximity to the firearm inside the vehicle and it was within his reach. However, the firearm was also in proximity to the owner-passenger of the vehicle, and a jury could reasonably doubt Carter's possession of the firearm given that he was driving with the owner of the vehicle and the firearm was also within reach of the owner in the passenger seat. Of course, it is also possible that a jury could conclude that the possession of the firearm was joint rather than individual and that both occupants of the vehicle possessed the firearm. Without more information about the precise location of the firearm and the controlled substances found inside the vehicle, and without any information about the owner-passenger, it is difficult to assess the

strength of the Government's case.  Based on the information provided, it appears

that the evidence could support either a conviction or an acquittal on this charge.

Overall, considering both arguments relating to the strength of the

Government's case, the court concludes that this factor is neutral and does not

clearly support either party's argument.

### D. Length of detention

Carter asserts that he has already been in custody for a considerable length

of time and his pending motion to dismiss is not likely to be decided soon due to

this court staying the motion pending an appeal that, in turn, is stayed by the Third

Circuit pending a final decision in another case.  (Doc. 62, pp. 5–7.)  Carter argues

that he should not be held for an indeterminate length of pretrial detention, and

asserts that "[i]f the Motion to Dismiss is ultimately denied, he can always serve

the time later.  But should it be granted, the time can never be returned to him."

(*Id.* at 7.)

In response, the Government points out that the length of detention is not

dispositive, and Carter has been held in pretrial custody for a period of time that is

less than that of other defendants whose pretrial detention has not been found to

violate due process.  (Doc. 63, p. 7 (citing *United States v. Harris*, No. 4:19-CR-

00207-03, 2023 WL 2290269, at *4 (M.D. Pa. Feb. 28, 2023) (holding that 45

months of detention did not violate due process); *United States v. Gibbs*, No. 23-

13

00035, 2024 WL 2112366, at *7 (D. Del. May 9, 2024) (holding that 24 months of pretrial detention did not violate due process).)  The Government also observes that Carter has moved for all but one of the continuances of the trial date, and although Carter opposed the Government's most recent continuance motion, he specifically stated through counsel that he did not want to set a date for trial.  (*Id.* at 8.)

Carter has been ordered detained in this federal criminal matter for twenty-two months.[7]  This is, indeed, a lengthy period of pretrial detention.  The court agrees with Carter's assertion that it is currently impossible to predict when the court will be in a position to lift the stay order and resolve the pending motion to dismiss.  Given the length of detention to date and the indefinite future delay based on the stayed motion, this factor weighs in favor of Carter's argument.  However, the length of pretrial detention is not "alone dispositive" and "'will rarely by itself offend due process.'"  *Harris*, 2023 WL 2290269 at *4 (quoting *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).)

### E.  Complexity of the case and whether the strategy of either party added needlessly to the complexity

Carter asserts that this case is not factually complex, but is legally complex in light of the uncertainty surrounding the constitutionality of the charge.  (Doc.

---

[7] The court notes that Carter has actually been in state custody for the entire duration of pretrial detention with a federal detainer.  Neither party argued that this factual matter has any impact on the due process analysis.  As a result, the court does not place any weight on this fact.

62, p. 7.)  The Government agrees that the case is not factually complex.  (Doc. 63,

p. 8.)

This is a relatively straightforward criminal matter.  Law enforcement

conducted a valid search of a vehicle in which there was found one firearm, some

controlled substances, and two individuals.  The sole factual question in this case is

whether the Government can prove beyond a reasonable doubt that Carter

possessed the firearm found inside the vehicle.  The lack of factual complexity in

this case is a factor that favors Carter's argument given that there is no obvious

impediment to bringing this less factually complex case to trial promptly.

Despite the relative simplicity of the factual issue, the case has been delayed

for fourteen months as a result of Carter filing a motion to dismiss the indictment.

Carter has moved for a continuance of the trial date repeatedly based on the

pending motion.  The considerable uncertainty about the constitutionality of the

charge of being a prohibited person in possession of a firearm, 18 U.S.C. §

922(g)(1), is a legally complex issue.  Carter's decision to move to dismiss the sole

charge in this case on constitutional grounds is certainly not needless.  Thus,

although Carter's strategic decision to move to dismiss the indictment has added

significantly to the overall complexity of the case, that added complexity is not

needless.

Although the Government does not dispute the necessity of filing the motion to dismiss, the Government points out that the delay in the resolution of that motion is caused by the need to await appellate court decisions, the timing of which is beyond the control of both Carter and the Government. (Doc. 63, p. 8.) The Government is correct. The delay caused by the pending motion is neither needless nor attributable to either party. As a result, this factor is neutral and does not clearly support either party's argument.

## CONCLUSION

Carter has been detained pending trial for a significant length of time and the future length of delay due to his pending motion to dismiss is uncertain. But the length of delay alone does not compel release. Instead, the court must consider this delay in light of all of the *Accetturo* factors in making this determination. Having considered each of the factors, as detailed in this opinion, the court concludes that continued detention is warranted.

An order will follow.

s/Jennifer P. Wilson_____
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 6, 2024