**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:22-CR-374 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL CARTER | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant Terrell Carter ("Carter") is charged in a one-count indictment with possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  Carter moves to dismiss the single-count indictment based the argument that Section 922(g)(1) violates the Second Amendment to the United States Constitution as applied to him.  (Doc. 27.)  For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Carter was charged with a single count of possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on October 19, 2022.  (Doc. 1.)  The Government alleges that on January 29, 2022, a Pennsylvania State Trooper conducted a traffic stop on a car driven by Carter on Route 283 in Dauphin County for changing lanes without a turn signal.  (Doc. 35, p. 1.)[1]  Upon approaching the car, the Trooper smelled marijuana and observed in

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

plain view a baggie containing a substance that appeared to be a small amount of cocaine on the driver's side of the car. (*Id.*) There was a female passenger in the car who was the registered owner of the vehicle. (*Id.*) Upon questioning, the passenger stated that any drugs or weapons found in the car belonged to Carter. (*Id.* at 2.) The Trooper then searched the car and found a loaded firearm under the driver's seat. (*Id.*)

Carter is alleged to have violated Section 922(g)(1) because he possessed this firearm, which was shipped and transported in interstate and foreign commerce, after he was previously convicted of at least one crime punishable by imprisonment for a term of more than one year. (Doc. 1.) The Government asserts that Carter has numerous convictions that disqualify him from possession of a firearm pursuant to Section 922(g)(1), including 2008 and 2014 Pennsylvania convictions for possessing a firearm without a license and possession with intent to distribute a controlled substance and another 2016 Pennsylvania conviction for possession with intent to distribute a controlled substance. (Doc. 35, pp. 2–3.)

On June 26, 2023, Carter filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment. (Doc. 27.) The motion was fully briefed as of August 28, 2023. (*See* Docs. 28, 35, 39.)

On October 11, 2023, this court entered an order staying the resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023).  (Doc. 42.)  Following the Third Circuit's decision in that appeal, Carter filed a motion to lift the stay and set a supplemental briefing schedule, which the court granted. (Docs. 70, 71.)  The parties then submitted supplemental briefs to address the impact of relevant decisions issued while Carter's motion to dismiss was stayed. (Docs. 72, 75.)

This matter is currently listed for trial on August 4, 2025.  (Doc. 77.)  Carter has been detained since his initial appearance and arraignment on October 27, 2022, after his motions to reconsider detention were denied.  (*See* Docs. 13, 45, 53, 61, 65.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  FED. R. CRIM. P. 12(b)(1).  In his pretrial motion to dismiss, Carter asserts an as-applied challenge to the constitutionality of Section 922(g)(1). (*See* Docs. 27, 28, 39, 72.)  In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless

unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418
U.S. 405, 414 (1974).

DISCUSSION

### A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Carter

Carter argues that Section 922(g)(1) imposes an unconstitutional
infringement of his right to keep and bear arms under the Second Amendment
because he, like the plaintiff in *Range v. Attorney General*, 69 F.4th 96 (3d Cir.
2023),[2] has only non-violent prior convictions.  (Doc. 28, p. 2.)  Further, he argues
that applying the two-part test articulated in *New York State Rifle Association v.
Bruen*, 597 U.S. 1 (2022), Section 922(g)(1) impacts his rights as a person
protected by the Second Amendment, and that the law is inconsistent with the
Nation's historical traditions of firearms regulation.  (Doc. 28, pp. 3–10.)  Carter
maintains that none of the decisions issued after he filed his motion to dismiss are
fatal to his motion, and instead some strengthen his argument to the extent that
they have focused on the temporary nature of disarmament when upholding certain
firearms restrictions.  (Doc. 72. pp. 3–11.)

---

[2] Carter maintains that the same argument applies based on the Third Circuit's second *en banc*
decision in *Range v. Attorney General*, 124 F.4th 218 (3d. Cir. 2024) ("*Range II*"), following the
Supreme Court's decision to vacate the Circuit's earlier *en banc* decision, *Range v. Attorney
General*, 69 F.4th 96 (3d Cir. 2023) ("*Range I*").  (Doc. 72, pp. 5–6.)

The Government argues in opposition that *Range I* was wrongly decided[3]

and distinguishable from this case in any event. (Doc. 35, pp. 3–4.) The

Government concedes that Carter is one of "the people" protected by the Second

Amendment pursuant to *Range*, but argues that Carter's motion should be denied

for two independent reasons. (*Id.* at 9.) The Government asserts first that Carter

fails to maintain that he possessed the firearm for a lawful purpose, and second that

the prohibition on firearm possession in Section 922(g)(1) as applied to Carter is

supported by relevant historical tradition. (*Id.* at 9–21.)

In reply, Carter disagrees with the Government's assertion that he is required

to state that he possessed the firearm for a lawful purpose because neither the

statute nor *Range I* requires such proof, and such a requirement would be

incompatible with Carter's Fifth Amendment right to remain silent. (Doc. 39, pp.

1–4.) Carter also disagrees with the Government's reliance on a "dangerousness"

standard for disarmament and argues that the Government has not met its burden of

establishing that disarmament of persons convicted of non-violent felony offenses

has a longstanding historical analogue. (*Id.* at 4–11.)

---

[3] In its supplemental brief, the Government does not argue that *Range II* is wrongly decided. The Government has not filed a petition for writ of certiorari from the decision in *Range II* and the time to file has expired. Thus, it appears that the Government does not contend that *Range II* was wrongly decided, and the court will not address that argument.

In their supplemental briefs, each party addresses the impact of four relevant decisions issued while Carter's motion to dismiss was stayed. (Docs. 72, 75.) Specifically, the parties address *United States v. Rahimi*, 602 U.S. 680 (2024), *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025).

### B. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742). And then, in 2022, the Court held in

*Bruen* "that the Second and Fourteenth Amendments protect an individual's right

to carry a handgun for self-defense outside the home." *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a

particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

To measure consistency with historical firearm regulations, the modern regulation

must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court

explained that the burden on the Government is to identify a "well-established and

representative historical *analogue*, not a historical *twin*. So even if a modern-day

regulation is not a dead ringer for historical precursors, it still may be analogous

enough to pass constitutional muster." *Id.* at 30. And then, in *Rahimi*, the Court

clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the

appropriate analysis . . . [is] whether the challenged regulation is consistent with

the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court

rejected the idea that the examination of historical analogues signals "a law trapped

in amber." *Id.* at 691.

7

## 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania, seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him. Applying then-controlling Third Circuit precedent, *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020), the district court granted summary judgment to the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021). Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*. A Circuit panel affirmed the district court decision, applying *Bruen* and concluding that the Government met its burden to show that Section 922(g)(1) reflects the Nation's historical tradition of firearm regulation. *Range v. Att'y Gen.*, 53 F.4th 262, 266 (3d Cir. 2022) (per curiam). Range petitioned for rehearing en banc, and the Circuit granted the petition and vacated the panel opinion. *Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2022). The en banc court reversed and remanded for the District Court to enter judgment in favor of Range, finding that Range remained one of "the people" protected by the Second Amendment and the Government did not

show that the Nation has a longstanding history and tradition of disarming people like Range. *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range I*").

The Government filed a petition for writ of certiorari. While that petition was pending, the Supreme Court decided *Rahimi*. The Court then vacated *Range I* and remanded for further consideration. *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second en banc opinion following remand, the Third Circuit reached the same conclusions as in *Range I*. The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction. *Range II*, 124 F.4th at 226–28. The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'" *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17). The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden. *Id.* (quoting *Bruen*, 597 U.S. at 24). The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to

lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms.  More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm. The record contains no evidence that Range poses a physical danger to others.  Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment.  *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025).  Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11.  First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors."  *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding."  *Id.*  Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as

long as a felon continues to 'present a special danger of misus[ing firearms],' in

other words, when he would likely 'pose[] a physical danger to others' if armed."

*Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232).  The *Pitsilides*

decision makes clear that the "'Second Amendment's touchstone is

dangerousness.'"  *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J.,

dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J.,

dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per

curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United

States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery

probative "to the prevailing Second Amendment analysis, including whether

Pitsilides poses a special danger of misusing firearms in a way that would endanger

others."  *Pitsilides*, 128 F.4th at 213.  However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider
> a convict's entire criminal history and post-conviction conduct
> indicative of dangerousness, along with his predicate offense and the
> conduct giving rise to that conviction, to evaluate whether he meets the
> threshold for continued disarmament.  As *Range II* illustrated,
> consideration of intervening conduct plays a crucial role in determining
> whether application of § 922(g)(1) is constitutional under the Second
> Amendment. *See* 124 F.4th at 232.  Indeed, such conduct may be highly
> probative of whether an individual likely poses an increased risk of
> "physical danger to others" if armed.  *Id.*

*Id.* at 212.  That is because an individual may be disarmed "consistent with the

historical principle that legislatures may disarm a person who poses a danger to the

physical safety of others." *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110 F.4th at 1128.)  Further, the Court observed that "both history and common sense reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing.  *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659).  This assessment "necessarily requires individualized factual findings."  *Id.*

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter.  In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed."  2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232).  Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to

violent confrontation.  *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge.  That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment.  *Id.*  Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction.  *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1).  In *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the Third Circuit held that "[a] convict completing his sentence on [federal] supervised release does not have a Second Amendment right to possess a firearm."  And, in *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*, No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to

individuals on state parole or probation.  However, this precedent is not controlling in this case because the defendant was not on any form of supervision at the time of the alleged offense conduct.

### C. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### 1. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to Defendant and his proposed conduct.  *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209.  Here, the Government concedes that Carter remains among "the people" despite his felony convictions.  (Doc. 35, p. 8.)  Rightfully so, based on the controlling precedent in *Range II* concluding that an individual who has a felony conviction remains among "the people."  *See Range II*, 124 F.4th at 228.

The Government, however, protests that the Second Amendment does not apply to Defendant's proposed conduct because he has not attested in this case that he possessed a gun for a lawful purpose such as self-defense.  (Doc. 35, pp. 9–11.)  Defendant disagrees, asserting that such attestation is not required by either Section 922(g)(1) or the *Range* decision.  (Doc. 39, pp. 1–4.)  Defendant also argues that requiring a criminal defendant to make such an attestation would violate his Fifth Amendment right to avoid self-incrimination.  (*Id.*)

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228.  The Court then stated: "It does."  *Id.*  In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year.  18 U.S.C. § 922(1).  The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons.  And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The Government's argument that Defendant's purpose for possession is relevant may arise from the Circuit's observation that the relief requested in Range's civil suit to possess firearms to hunt and protect himself fit squarely within the constitutional right as defined by *Heller*.  *See Range II*, 124 F.4th at 228.  But immediately following this observation, the Court then quoted the following portion of the *Heller* decision: "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  *Range II*, 124 F.4th at 228 (quoting *Heller*, 554 U.S. at 582).  Reviewing this paragraph in *Range II* in totality, rather than the sole sentence about Bryan Range's expressed purpose in filing his declaratory judgment action, the court understands that the Circuit concluded that Section 922(g)(1)

regulates Second Amendment conduct because it criminalizes the possession of any firearm or ammunition by a class of persons, regardless of the purpose for the possession (which would include lawful purposes, such as Bryan Range's).

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question. 2025 WL 384112 at *2. Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to Section 922(g)(1). On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step. In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

Carter raises a valid question about whether a criminal defendant raising a Second Amendment challenge to a Section 922(g)(1) charge pursuant to Federal Rule of Criminal Procedure 12 could be required to state his purpose for possessing a firearm or ammunition when he has pleaded not guilty to the act of

possession.  This would seem to pose a classic "Catch 22" situation for the defendant: either raise a Second Amendment challenge by admitting possession of the firearm and asserting the firearm was possessed for the lawful purpose of self-defense (thereby admitting guilt of the conduct at issue for the Section 922(g)(1) charge), or maintain factual innocence of the charge but then forego the constitutional challenge.  In addition, if such a requirement were to be imposed, as urged by the Government, then consideration would need to be given to the Fifth Amendment implications.[4]  However, the court is not required to analyze this question here because: a) the court does not understand that there is a statement-of-purpose requirement as explained above; and b) this defendant's challenge fails at the second *Bruen* step in any event.

## 2. *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by

---

[4] This concern may be unique to a defendant charged solely with a Section 922(g)(1) violation and no other crimes.  That is because the court accepts as true the allegations in the indictment for purposes of ruling on a motion to dismiss.  *See United States v. Huet*, 665 F.3d 588, 601 (3d Cir. 2012), rev'd on other grounds.  If a defendant is charged in an indictment with possessing a firearm in furtherance of drug trafficking pursuant to 18 U.S.C. § 924(c) as well as being a person prohibited from possessing the same firearm due to a prior conviction pursuant to 18 U.S.C. § 922(g)(1), then the court may be able to conclude, accepting the allegations in the indictment as true, that this defendant did not possess the firearm at issue for a lawful purpose. *See, e.g.*, *United States v. Mollett*, No. 3:21-cr-16-21, 2025 WL 564885, at *5–6 (W.D. Pa. Feb. 20, 2025).

analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'"  *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*.[5]  As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others."  *Pitsilides*, 128 F.4th at 213.  The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament."  *Pitsilides*, 128 F. 4th at 212.  That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of

---

[5] Carter has questioned whether *Pitsilides* applies to a motion to dismiss a Section 922(g)(1) prosecution given that the case is a declaratory judgment action.  (Doc. 72, p. 8.)  In support, Carter cites *United States v. Mollett*, No. 3:21-cr-16-21, 2025 WL 564885, at *4 n.2 (W.D. Pa. Feb. 20, 2025), wherein the court noted that it is not clear whether the *Pitsilides* holding regarding the scope of the record to review would apply in the context of an as-applied challenge in the criminal context.  Although the court raised this question regarding the scope of the record, it did not question the applicability of *Pitsilides* when analyzing historical tradition.  *See id.* at *6–7.  This court relies upon *Pitsilides* for the same legal proposition as the *Mollett* court.  This court is not aware of any reason why the Circuit's analysis of the *Bruen* step two determination would apply with any less force in the context of a motion to dismiss a charge in a criminal prosecution than in a declaratory judgment action.  In each matter, the court is required to determine whether the Government's disarmament of an individual due to a prior conviction is consistent with the Nation's historical tradition of firearm regulation.

others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding. The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Carter is constitutional because "his repeated and serious drug trafficking convictions, combined with felony convictions for unlawful firearm possession, shows that he

is part of a category of offenders who pose a special danger of misuse of firearms."
(Doc. 75, p. 8.)  The Government submitted Carter's rap sheet as an exhibit, which
details each of his three prior convictions for felony drug trafficking and two prior
convictions for possessing a firearm without a license.  (*Id*. at 9; Doc. 75-1.)  The
Government submits that these prior convictions alone provide a basis to reject
Carter's constitutional challenged based on the demonstrated dangerousness of
drug trafficking crimes in combination with firearms.  (Doc. 75, pp. 9–10.)  In
addition, the Government argues that Carter's dangerousness is further
demonstrated by his prior convictions for drug possession, fleeing to avoid
apprehension, providing false identification to law enforcement, and disorderly
conduct.  (*Id.* at 11.)  The Government summarizes the relevant aspects of Carter's
criminal record and background information as follows: "Prior to being found in
possession of a firearm as charged in this case, Carter had repeatedly engaged in
serious and dangerous criminal conduct, and his pattern of recidivism despite
multiple convictions and prison sentences, underscores his dangerousness and
demonstrates that § 922(g)(1) is constitutional as applied to him."  (*Id.*)

Carter maintains that permanent disarmament through application of Section
922(g)(1) as applied to him is unconstitutional because his prior convictions are all
non-violent and the Government has not met its burden of showing the Nation's

historical tradition of permanently disarming a person with only non-violent prior felony convictions.[6]  (Doc. 28, pp. 8–10; Doc. 39, pp. 4–10; Doc. 72, pp. 9–12.)

Having considered both parties' arguments, the court concludes that Carter's seven prior convictions for felony drug trafficking and unlawful firearm possession demonstrate that Carter presents a danger of misusing firearms and would likely pose an increased risk of physical danger to others if permitted to be armed.  *See White*, 2025 WL 384112 at *2 (holding that defendant's prior criminal convictions for possession with intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm "shows that he would pose such a danger to others if armed because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding that a person convicted of a crime is dangerous and can be disarmed if he has committed, among others, "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than Bryan

---

[6] Carter also argues that his challenge should succeed because he was not serving a sentence at the time of the alleged offense, and he is not required to be granted restoration of his Second Amendment rights prior to possessing a firearm.  (Doc. 72 at pp. 9–10.)  Carter is correct that his challenge is not foreclosed by *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024) or *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), or the fact that he was not granted restoration prior to the alleged possession of a firearm in this case.  However, the fact that his challenge is not precluded for these reasons, does not foreclose the conclusion that his challenge fails for the reason explained in this Memorandum.

Range for purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior convictions for drug trafficking less than two years prior to the Section 922(g)(1) offense support the conclusion that defendant presented a special danger of misusing firearms and was subject to disarmament).Defendant's other prior convictions–though not necessarily sufficient individually to establish the requisite degree of dangerousness–when considered in combination with the drug trafficking and firearm convictions, demonstrate Carter's historical involvement in dangerous and recidivist criminal conduct.

Based on this comprehensive review of Carter's criminal record, it is clear that Carter presents a far greater risk of dangerousness than Bryan Range if permitted to be armed.  Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Carter.

## CONCLUSION

For the foregoing reasons, Carters's motion to dismiss the indictment, Doc. 27, will be denied.  An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 30, 2025